IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

ROXANNE L. HOOVER,              )
                                )
          Plaintiff,            )
                                )
v.                              )   Case No. CIV-17-242-KEW
                                )
COMMISSIONER OF THE SOCIAL      )
SECURITY ADMINISTRATION,        )
                                )
          Defendant.            )

**OPINION AND ORDER**

Plaintiff Roxanne L. Hoover (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

(10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was 39 years old at the time of the ALJ's decision. Claimant completed her education through the tenth grade. Claimant has worked in the past as a gas station worker, restaurant cook, and bowling alley manager. Claimant alleges an inability to work beginning December 31, 2005 due to limitations resulting from epilepsy, PTSD, depression, anxiety, panic attacks, bipolar disorder, breathing problems, COPD, and asthma.

**Procedural History**

On July 15, 2014, Claimant protectively filed for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On May 12, 2016, Administrative Law Judge ("ALJ") Luke Liter conducted an administrative hearing by video with Claimant appearing in Poteau, Oklahoma and the ALJ presiding from Tulsa, Oklahoma. On July 26, 2016, the ALJ entered an unfavorable decision. The Appeals Council denied review on May 16, 2017. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with certain specified non-exertional limitations.

### Errors Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to find Claimant's impairments met or equaled a listing; (2) reaching an improper RFC determination; and (3) failing to demonstrate that there are other jobs that Claimant could perform at step five.

4

**Consideration of the Listings**

In his decision, the ALJ found Claimant suffered from the severe impairments of bipolar disorder II, panic disorder, and seizure disorder. (Tr. 12). The ALJ determined Claimant retained the RFC to perform work at all exertional levels with the following non-exertional limitations:

> The claimant cannot tolerate exposure to hazards such as unprotected heights or dangerous moving machinery. Driving should not be part of the job duties. The claimant should avoid climbing ladders, ropes, and scaffolding. The claimant is limited to simple tasks(defined as un-skilled work with a specific vocational preparation (SVP) of 1-2). The claimant should not have contact with the public. The claimant's contact with co-workers and supervisors should be superficial (defined as doing the same thing over and over again). Job duties should not include fast pace or production quotas.

(Tr. 14).

After consultation with a vocational expert, the ALJ determined Claimant could perform the representative jobs of mail clerk, office helper, polisher, and addresser, all of which the ALJ concluded existed in sufficient numbers in both the regional and national economies. (Tr. 19). As a result, the ALJ concluded that Claimant was not under a disability since July 15, 2014, the date the application was filed. (Tr. 20).

Claimant contends the ALJ should have found her impairments met

5

or equaled a listing at step three. Specifically, Claimant asserts that he met Listing 11.02 related to seizure disorders. This listing provides:

> 11.02 Epilepsy — convulsive epilepsy, (grand mal or psychomotor), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once a month in spite of at least 3 months of prescribed treatment. With:
>
> A. Daytime episodes (loss of consciousness and convulsive seizures) or
>
> B. Nocturnal episodes manifesting residuals which interfere significantly with activity during the day.

20 C.F.R. pt. 404, subpt. P, app. 1, § 11.02.

The Social Security regulations include a requirement that "the impairment persists despite the fact that the individual is following prescribed antiepileptic treatment." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.00A. The relevant regulation also states that adherence to prescribed therapy can ordinarily be determined from objective clinical findings in the report of the physician providing treatment for epilepsy and that the evaluation must include consideration of the serum drug levels. Id. Claimant must satisfy all of these required elements for a Listing to be met. Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

The ALJ determined that "claimant's condition does not meet the requirements of Listing 11.02 regarding convulsive epilepsy because

6

she does not have seizures occurring at least once a month in spite of three months treatment." (Tr. 12).[2] Claimant testified that before she began her regimen of anti-seizure medication, she experienced four or five seizures per month. (Tr. 40). The record indicates that while under the care of Dr. Jeannie McCance, Claimant did not suffer any grand mal seizures in June and August of 2011 or in January of 2012. (Tr. 298-99). In May of 2012, Claimant had only suffered a pre-seizure jerking episode. (Tr. 293). In November of 2012, Claimant suffered a seizure which she represented was the "1st in a long time." Claimant's medication was increased. (Tr. 291). In March of 2013, Claimant reported that her last seizure was four months prior to her visit. (Tr. 290). In May of 2013, Claimant reported she was doing "pretty good", although she also reported certain indicators of oncoming seizure activity such as a copper taste in her mouth. (Tr. 289). In October of 2013, Claimant reported having two seizures per day and panic attacks due to family issues. (Tr. 288).

In May of 2014, Claimant went to the emergency room reporting weakness and fatigue and a loss of consciousness. (Tr. 320). She reported no seizures. (Tr. 312). Claimant did not seek treatment

---

[2] The ALJ also addressed Listing 11.03. However, Claimant does not assert the ALJ erred in his findings on this listing so it will not be addressed further in this review.

7

again for her seizure disorder until October of 2014 when she began seeing Dr. Mark Rogow for medication refills. She reported to him that her last seizure was three weeks prior to the visit. (Tr. 365).

In November of 2014, Claimant underwent a mental status examination with Dr. Theresa Horton. Claimant reported that she had not been taking any medication for her seizures for about one year prior to seeing Dr. Rogow. She also reported that she experienced three seizures per month while on medication. (Tr. 344).

In January of 2015, Claimant reported she was off of her anti-seizure medication for over a month and had minor and major seizures since then. (Tr. 361). In August of 2015, Dr. Rogow noted Claimant had been out of her anti-seizure medication and experienced a seizure. (Tr. 360).

The medical record simply does not support Claimant's exaggerated seizure claims while Claimant was compliant with her medication regimen. The record indicates that Claimant suffered one seizure in November of 2012, a limited period of seizures due to family issues in October of 2013 which was resolved by May of 2014, and a seizure three weeks prior to seeing Dr. Rogow. This activity does not meet the requirements of Listing 11.02. Moreover, Soc. Sec. R. 87-6 entitled, "The Role of Prescribed Treatment in the Evaluation of Epilepsy" provides in relevant part that: "[i]n every

8

instance, the record of anticonvulsant blood levels is required before a claim can be allowed." 1987 WL 109184, *2. The record does not include Claimant's anticonvulsant blood level testing. As a result, the ALJ did not err in finding Claimant's impairments do not meet or equal Listing 11.02.

### RFC Determination

Claimant asserts several errors in the ALJ's RFC findings. She contends he did not include appropriate limitations for Claimant's seizure activity. In particular, Claimant states that she must recover during the postictal period when she stated that she sleeps. Claimant's daughter also offered a statement as to her observations of Claimant during and after a seizure, including the statement that Claimant "isn't very lucid" and "can't remember anything before she had it." (Tr. 210). Given the fact that the frequency of Claimant's seizure activity is greatly reduced from Claimant's testimony and during periods when she is medication compliant, this Court finds further restrictions then those imposed by the ALJ are not warranted. No medical source has offered more stringent restrictions than those found by the ALJ in order to protect Claimant from the effects of her occasional seizure activity. Claimant contends the ALJ erred in not obtaining a detailed description of one of Claimant's seizures as referenced in 20 C.F.R.

9

Pt. 404, Subpt. P, App. 1, § 11.00(h)(2). This provision applies to assessing whether Claimant met a listing at step three, which this Court has concluded she did not. Claimant also carries the burden in this showing of a medical source description of her seizures.

Claimant next contends the ALJ did not include adequate limitations in the RFC for her mental impairments. Dr. Horton diagnosed Claimant with Bipolar Disorder, Type II, most recent mood depressed and Panic Disorder. (Tr. 345). She concluded that

> Ms. Hoover appears capable of understanding, remembering and managing most simple and complex instructions and tasks. She likely does not manage stress well and does not adjust as well into areas that are densely populated and/or fast paced.

(Tr. 346).

Dr. Gary Lindsay and Dr. Jason Gunter acted as reviewing consultative mental health professionals in this case. They concluded Claimant could understand, remember, and carry out simple instructions with routine supervision; could relate to supervision and a limited number of co-workers on a superficial work basis; could not effectively relate to the public; and could adapt to a work environment. (Tr. 61, 74).

The ALJ gave these opinions "great weight" and provided a detailed justification for doing so based upon the medical record.

10

(Tr. 17, 18). Based upon these opinions, the ALJ restricted Claimant to simple tasks with an SVP of 1-2, no contact with the public, "brief and cursory" contact with co-workers and supervisors and no job duties which require fact pace or production quotas. (Tr. 14). No medical professional determined that Claimant's periodic panic attacks restricted her from any employment.

"[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." White v. Barnhart, 287 F.3d 903, 906 n. 2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence." Soc. Sec. R. 96-8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work related activity the individual can perform based on evidence contained in the case record. Id. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Id. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional

11

capacity in question." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012). In this case, the ALJ did provide direct correlation between the medical opinion evidence and his RFC findings. The ALJ's RFC assessment was supported by substantial evidence.

Claimant also asserts the ALJ failed to perform a proper credibility analysis. It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back,

standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

The ALJ relied upon appropriate factors in evaluating the credibility of Claimant's statements. The nature of Claimant's treatment, non-compliance with medicine regimen, the objective medical testing, and the inconsistencies between the claimed seizure activity and the medical record all provide specific and legitimate reasons for the ALJ's questioning of Claimant's credibility.

### Step Five Questioning of the Vocational Expert

Claimant follows the challenges to the RFC findings with the obligatory challenge to the hypothetical questioning of the vocational expert, contending that the RFC was incorrect and, therefore, the questioning did not accurately reflect Claimant's restrictions. Since this Court found the RFC was supported by substantial evidence and the questioning of the vocational expert posed by the ALJ mirrored the RFC findings, no error is found at step five.

### Conclusion

The decision of the Commissioner is supported by substantial

evidence and the correct legal standards were applied.  Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED**.

IT IS SO ORDERED this 25th day of September, 2018.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE